IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROBERT TCHENGUIZ,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>HEATHER BIRD,<br><br>　　　　　Respondent. | CV 21–128–M–DWM<br><br>ORDER |

There is a presumption that cases brought under the Convention on the Civil Aspects of International Child Abduction ("the Hague Convention"), and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001, et seq., will be decided within six weeks from the filing of a petition, *see* Hague Convention, Oct. 25, 1980, Art. 2, 11, 18, 19, I.L.M. 1501–1503. As noted in a previous order, (Doc. 33), this case has already exceeded that timeline.

In October 2021, Petitioner Robert Tchenguiz filed a verified petition for the return of a child to England under the Hague Convention and the International Child Abduction Remedies Act. (Doc. 1.) Tchenguiz also moved to expedite these proceedings. (Doc. 3.) The Court held an initial show cause and scheduling hearing on November 9, 2021, where Tchenguiz was represented by counsel and

1

Respondent Heather Bird appeared pro se. Following the November 9 hearing, the Court granted Tchenguiz's motion to expedite the proceedings and set a final evidentiary hearing for December 8, 2021. (Doc. 11.) However, given new defenses and affirmative defenses raised by Bird in her prehearing brief, (Doc. 30), the original December 8, 2021 hearing was vacated and the hearing reset for January 10, 2022, (Doc. 33). The order vacating the December 8, 2021 hearing also ordered the minor child, V.A.B.T., to undergo a mental evaluation addressing the issue of psychological harm no later than December 23, 2021. (*Id.* ¶ 3.)

Since that time, Bird acquired counsel, (Doc. 49), and a new scheduling order issued, (Doc. 37). That scheduling order specifically stated that "[t]he child must be made available for a mental evaluation by an evaluator agreed upon by the parties or, if the parties are unable to agree, by the respective evaluator chosen by each party. The child will be evaluated outside the presence of either Petitioner or Respondent." (*Id.* ¶ 7.) Consistent with the deadlines in the scheduling order, Tchenguiz notified the Court of his intent to utilize Dr. Robert Simon as the mental evaluator of V.A.B.T. because "no meaningful discussion could be had to explore the possibility of a jointly-agreed mental health evaluator" given the late appearance of Bird's counsel in this case. (Doc. 46 at ¶¶ 1–3.)

Apparently, however, on the afternoon of the same day that Tchenguiz provided notice of his intent to use Dr. Simon, "the parties did, in fact, agree to

jointly utilize the services of Dr. [Michael] Scolatti to perform the necessary psychological evaluation to address relevant issues critical to the proper resolution of Respondent's defenses in this matter." (Doc. 70 at 2.) That purported agreement underlies Tchenguiz's pending motion to strike or, in the alternative, to continue the January 10, 2022 hearing. (*Id.*) The motion to strike eliminates the need for certain testimony from witnesses both parties have identified in motions for remote witness testimony, (Docs. 67, 69), and so these three pending motions are discussed in turn.

I. **Motion to Strike**

According to Tchenguiz, "[o]n December 18, 2021, counsel for both parties and Dr. Scolatti held a conference call to discuss moving forward with the evaluation," at which time it was agreed that counsel would provide Dr. Scolatti with a joint memorandum outlining the issues and scope of the evaluation. (Doc. 70 at 3.) This joint memorandum apparently never materialized, however, because the evaluation occurred on a day of which the parties were unaware so that each party submitted separate "draft" outlines to Dr. Scolatti. (*Id.* at 4.) On December 27, 2021, Dr. Scolatti provided his preliminary findings to the parties via a conference call, but he indicated that he had misplaced V.A.B.T.'s psychological testing so that V.A.B.T. would have to return to Missoula the next day to retake it. (*Id.*) Subsequently, on December 30, 2021, Dr. Scolatti contacted the parties'

3

counsel to inform them he was withdrawing from the case because he felt his "role ha[d] not been clarified" and he noted that he had not prepared a written report. (*Id.* at 5.) Dr. Scolatti indicated that he was "instructed by [Bird]" not to communicate with the parties going forward. (*Id.* at 6 n.1.) As Tchenguiz notes, the evidentiary hearing is now less than a week away. (*Id.* at 7.) Due to Dr. Scolatti's withdrawal, there is no mental evaluation for either party to utilize.

Tchenguiz seeks to strike Bird's grave risk of harm and mature child affirmative defenses. (*See generally id.*) The request is based in part on the lack of a mental evaluation based on the conduct described above, and it is also based on insufficient discovery responses from Bird. In addition, Tchenguiz asks "that the Court preclude the presentation of any evidence by Respondent in contradiction to Petitioner's claim that England is the child's country of habitual residence." (*Id.* at 12.) Finally, he also asks that the Court order that England is the child's country of habitual residence. (*Id.* at 13.) Because several of Tchenguiz's objections are well-taken for the reasons explained below, the motion to strike is largely granted.

### A. Affirmative Defenses

Under Federal Rule of Civil Procedure 37(b), a district court may impose sanctions where a party fails to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A). This rule is implicated because the December 8, 2021 order established discovery protocols under Federal Rule of Civil Procedure 26. (*See*

Doc. 37.) One possible sanction under Rule 37(b)(2)(A)(ii) is "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."

Bird seeks to raise two affirmative defenses: the grave risk of harm defense and the mature child defense. The "grave risk defense . . . reflects the proposition that the remedy of return . . . is inappropriate when the abductor is a primary caretaker who is seeking to protect herself and the children from the other parent's violence." *Colchester v. Lazaro*, 16 F.4th 712, 717 (9th Cir. 2021) (quotation marks omitted). This defense must be established by clear and convincing evidence. *Id.* at 718. "And even when the respondent establishes that a grave risk of harm exists, the court may still order the child's return if it determines there are ameliorative measures that would allow both the return of the child[ ] to [his or her] home country and [the child's] protection from harm." *Id.* (quotation marks omitted) (alterations in original).

By contrast, the "mature child objection" is grounded in the text of the Hague Convention itself. Article 13 states: "The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." This defense must be established by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B). There are four

5

avenues through which courts may receive evidence of a child's objection to being returned to the country of habitual residence: (1) the child's testimony in open court; (2) interviewing the child in camera; (3) requesting a psychological evaluation of the child; or (4) appointing an attorney or guardian ad litem. *See, e.g., In re Skrodzki*, 642 F. Supp. 2d 108 (S.D.N.Y. 2007) (submitting testimony of child); *Escobar v. Flores*, 183 Cal. App. 4th 737 (2010) (child interviewed in chambers with attorneys for the parties); *McManus v. McManus*, 354 F. Supp. 2d 62 (D. Mass. 2005) (appointing a psychologist to examine child); *Taveras v. Morales*, 22 F. Supp. 3d 219 (S.D.N.Y. 2014) (appointing attorney to represent child).

As a preliminary matter, the conduct Tchenguiz alleges Bird undertook in relation to Dr. Scolatti is, at the very least, troubling, particularly in light of the Court's admonition that—upon the appointment of counsel—Bird was not to be involved in the litigation of this case. (*See* Doc. 50.) Moreover, considering that Bird bears the burden of proving the "grave risk of harm" defense by clear and convincing evidence, the lack of a mental evaluation seriously undercuts her ability to meet that evidentiary threshold. And, despite an informal extension of the discovery deadline by the parties, Bird has not yet produced any documents in response to Tchenguiz's requests for production. (Doc. 70 at 8.) As has been noted multiple times in this case, time is of the essence; Bird's failure to comply

6

with the discovery order, (Doc. 37), warrants invocation of the sanction under Rule 37(b)(2)(A)(ii) that prohibits the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. In the absence of such evidence, Bird's "grave risk of harm defense" is struck.

While Bird's non-compliance with the discovery order raises similar concerns in relation to the "mature child" defense, the defense will not be stricken because the viability of that defense may be assessed based on an in camera examination of the child, which is a possibility independent of the discovery violations. Accordingly, Bird is permitted to raise the mature child defense, but the Federal Rules of Evidence apply at the January 10, 2022 hearing so Tchenguiz remains free to object to any evidence that was not properly disclosed.

### B. Habitual Residence

The main remedy of the Hague Convention is the return of the child to the "country of habitual residence" for the actual custody determination. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 5 (2014). The term "habitual residence" is not defined in the Hague Convention, and the United States Supreme Court recently clarified that the term "suggest[s] a fact-sensitive inquiry, not a categorical one." *Monasky v. Taglieri*, 140 S. Ct. 719, 726 (2020). Determining a child's habitual residence requires consideration of the totality of circumstances of each case to

ascertain "[t]he place where a child is at home, at the time of removal or retention" because that place "ranks as the child's habitual residence." *Id.*

Here, Tchenguiz has repeatedly argued that England is V.A.B.T.'s country of habitual residence. Bird apparently disagrees. Bird's prehearing brief states, "V.A.B.T.'s residence is no longer England[;] it is the United States." (Doc. 30 at 17.) Bird's answer to the amended verified petition does not make as strong a claim but continues to deny "the characterization that the minor child is being wrongfully retained or that she has refused to return the child to his country of habitual residence." (Doc. 52 at 3.)

Despite Bird's disagreement with the fact that England is the child's country of habitual residence, she apparently responded to Tchenguiz's request for any and all documents related to her claim that England is not the country of habitual residence with the statement, "None at this time." (Doc. 70 at 12.) Given the fact-intensive nature of the habitual residence inquiry, it is significant that Bird has not disclosed any evidence in support of her argument that England is not the country of habitual residence. The lack of production is even more problematic for Bird given that Tchenguiz commenced these proceedings within a year of V.A.B.T.'s presence in the United States, even assuming *arguendo* that the alleged wrongful retention began in December 2020. *See* Hague Convention, Art. 12.

8

Thus, given the complete absence of any evidence suggesting that England is not the country of habitual residence, England shall be recognized as V.A.B.T.'s country of habitual residence for purposes of this proceeding.

## II.   Remote Testimony

With the elimination of the grave risk of harm defense and the establishment of England as V.A.B.T.'s country of habitual residence, this case has effectively been whittled down to a single issue: whether the mature child defense applies. As a result, the parties should anticipate requiring fewer witnesses and exhibits to resolve this case.

## III.   Conclusion

Based on the above,

IT IS ORDERED that Tchenguiz's motion to strike, (Doc. 70), is GRANTED IN PART and DENIED IN PART. It is GRANTED to the extent that Bird is prohibited from raising the "grave risk of harm" defense or introducing evidence or witnesses related to this defense at the January 10, 2022 hearing. It is also GRANTED to the extent that the Court recognizes England as the child's country of habitual residence. The motion is DENIED insofar as Bird may present a "mature child" defense, and the hearing will not be continued.

IT IS FURTHER ORDERED that, in light of the above, the parties' motions for remote witness testimony, (Docs. 67, 69), are DENIED. Given the narrowness

of this case and consistent with the Court's previous scheduling order, (Doc. 37), the parties are instructed to file updated witness lists and any motions for those limited witnesses to appear remotely by 5 p.m. on January 5, 2022.

DATED this 4th day of January, 2022.

11:24 A.M.

Donald W. Molloy, District Judge
United States District Court